IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FLORENCE BUTTON,                               )<br>                                                         )<br>                   Plaintiff,                          )<br>                                                         )<br>vs.                                                      )<br>                                                         )          Case No.       CIV-07-1357-M<br>MICHAEL J. ASTRUE,                         )<br>Commissioner of the Social               )<br>Security Administration,                      )<br>                                                         )<br>                   Defendant.                      ) | |

# FINDINGS & RECOMMENDATION
# OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423 and her application for supplemental security income benefits (SSI) under 42 U.S.C. §1382c(a)(3). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B), and for the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED and REMANDED for further administrative proceedings**..

## PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI on June 22, 2004 alleging a disability since February 15, 2002 (TR. 63-66, 234-237). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 47, 46, 241, 246). Pursuant to Plaintiff's request, a hearing *de novo* was held before an ALJ on January 10, 2007 (TR. 257-285). The Plaintiff appeared in person and with her attorney and offered her testimony in support of the applications (TR. 259-274). A vocational expert (VE) testified at the request of the ALJ (TR. 275-284). The ALJ issued his decision on March 29, 2007 finding that Plaintiff was not entitled to DIB or SSI (TR. 24-

32). The final decision of the Commissioner was reached by the Appeals Council by decision dated September 28, 2007 wherein it determined that Plaintiff was not entitled to DIB or SSI (TR. 9-10).

## STANDARD OF REVIEW

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations omitted).*

## DISCUSSION & FINDINGS

In addressing the Plaintiff's disability applications the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520.  At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, so the process continued (TR. 26). At step two, the ALJ concluded that Plaintiff's lumbar back pain, hyperthyroidism, and bladder problems were severe impairments (TR. 26). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 26). At step four, the ALJ found that Plaintiff lacked the residual functional capacity (RFC) to perform her past relevant work (PRW) (TR. 30).

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  The ALJ found that Plaintiff had the RFC to perform a wide range of sedentary work but was only "frequently able to climb, balance, stoop, [sic] knee, crouch, or crawl (TR. 29).  Despite this limited range, the ALJ found that Plaintiff could perform other jobs which existed in significant numbers in both the national and regional economy (TR. 29). By considering the testimony of the VE and using Medical-Vocational Rule 201.15 as a framework for decision making, the Commissioner[1] determined that the Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB or SSI (TR. 30-31).

On appeal to this Court, Plaintiff alleges that the ALJ erred by (I) improperly rejecting the opinions of Plaintiff's treating physicians; and that (II) the ALJ erred in his credibility analysis.

MEDICAL EVIDENCE

In August 2002, Plaintiff's treating physician, Raj Motwani, D.O. (urology), examined her and assessed her as having detrusor instability and an overactive bladder (TR. 150).  In June 2004, Plaintiff reported to Dr. Motwani that her "medication has worked much, much better" and that she was "quite happy" (TR. 148).

In October 2004, Plaintiff underwent a consultative examination performed by S.A. Chaudry, M.D. (internal medicine) who found that Plaintiff had paraspinous muscular tenderness with painful range of motion in her lumbosacral spine; and that xrays of her lumbosacral spine were normal except for osteophyte formation over L4 and 5 (TR. 155). Dr. Chaudry's impression

---

[1] The Appeals Council adopted the ALJ's finding regarding whether the claimant was disabled but failed to adopt the ALJ's finding regarding transferable skills. The Appeals Council found that the ALJ had erred in determining that the issue of transferability of skills was not material and further erred in applying Medical-Vocational Rule 201.14. Thus, in its decision the Appeals Council found transferability of skills material and applied Medical-Vocational Rule 201.15 which directed a finding of not disabled (TR. 9-10).

was of lumbosacral spine osteoarthritis and noted that there were no significant neuromuscular deficits present (TR. 155).

Also in October 2004, agency physicians completed an RFC assessment of Plaintiff in which they concluded that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; and that Plaintiff could stand and/or walk and sit (with normal breaks) for a total of about 6 hours in an 8-hour workday (TR. 162).  Agency physicians found that Plaintiff was limited in that she was only frequently able to engage in climbing, balancing, kneeling, crouching, or crawling; and that she was only able to occasionally engage in stooping (TR. 163). Agency physicians further found that Plaintiff had no other exertional, postural, manipulative, visual, communicative or environmental limitations (TR. 163-165).

May 2005 MRI findings by Gregory Henzie, M.D., showed the following:

> 1. At L4-5 a small bulge with a right paracentral annular tear and moderate facet arthrosis result in borderline central canal stenosis and mild narrowing of the right neural foramen.
> 2. At L3-4, a small bulge with a midline annular tear and moderate facet arthrosis result in borderline central canal stenosis. The foramina are not compromised.
> 3.  At L5-S1, a small bulge with a midline annular tear and mild facet arthrosis are present. Neither the thecal sac nor foramina is significantly compromised.
> 4.  These findings are stable compared to the prior MRI dated April 15, 1998.

(TR. 168).

In June 2005, Plaintiff's treating physician, Kim King, D.O., stated that Plaintiff had lifting restrictions which prevented her from lifting more than 5 to 10 pounds; that she had a poor prognosis; that she did not expect her disability to improve over the next year and "in fact, I would expect with aging, a further deterioration of her lumbar spine and increasing pain" (TR. 169). Dr. King further stated that "I do not believe the patient could return to full-time employment and believe her to be completely disabled" (TR. 169-170).  In September 2005, Dr.

King completed a "Multiple Impairments Questionnaire" in which she found that Plaintiff could sit and/or stand/walk 0-1 hour in an eight-hour workday; that she must get up and move around every 30 minutes and wait 30 minutes before sitting again; and that she could occasionally lift 5-10 pounds but could never carry 5-10 pounds (TR. 191-192). Dr. King also concluded that Plaintiff had significant limitations in doing repetitive reaching, handling, fingering or lifting because such activity would cause an increase in her low back pain; and that Plaintiff was moderately limited in her ability to grasp, turn or twist objects (TR. 192). Dr. King further concluded that Plaintiff was markedly limited in her ability to use her arms for reaching (including overhead); and that Plaintiff could not perform a full time competitive job that required her to keep her "neck in a constant position (e.g. looking at a computer screen, looking down at the desk)" (TR. 193-194). Dr. King further concluded that Plaintiff's "experience of pain, fatigue or other symptoms" were severe enough to "Frequently" interfere with her attention and concentration; and that Plaintiff's impairments would cause her to be absent from work "More than three times a month" (TR. 194, 195).

At the hearing Plaintiff testified that she has a "throbbing, grabbing pain" in her lower back if she does "too much"; and that she could only stand for "about 15 minutes" (TR. 265). She further testified that her high blood pressure and her overactive bladder prevented her from working; that her medications caused side effects of dry mouth and constipation; and that sometimes she must stay close to a bathroom (TR. 267, 270). She further testified that she could only walk about half a block; that she could sit for "maybe an hour"; and that she could not stoop very far without pain (TR. 271, 273, 274).

## I.

Plaintiff fargues that the ALJ improperly ignored and rejected the opinions of her treating physicians, Drs. King and Motwani (See Plaintiff's Brief at pages 6-7). If an ALJ disregards a treating physician's opinion, he must set forth "specific, legitimate reasons" for doing so. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). In *Goatcher v. United States Dep't of Health & Human*

5

*Services*, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. § 404.1527(d)(2)-(6).

The ALJ provides a thorough summary of the medical evidence but inexplicably fails to discuss or even mention the opinions of Plaintiff's treating physician, Dr. King, set forth in the September 2005 "Multiple Impairments Questionnaire" (TR. 189-196). On remand the ALJ should specifically discuss the findings in the Questionnaire and if he disregards those findings he must set forth specific, legitimate reasons for doing so. As to the opinions of Dr. Motwani, the ALJ appears to have adopted his findings (TR. 27). Plaintiff fails to specify what, if any, opinion of Dr. Motwani was ignored or rejected.

## II.

Plaintiff argues on appeal that the ALJ erred in his assessment of Plaintiff's credibility (See Plaintiff's Brief at page 7). The ALJ's failure to discuss or even mention significant findings and opinions of Plaintiff's treating physician, Dr. King, serves to taint the ALJ's credibility and RFC determinations. Thus, the credibility assessment and any remaining allegations of error will not be discussed herein.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is not supported by substantial

evidence and should be **REVERSED and REMANDED for further administrative proceedings**. The parties are advised of their right to object to these findings and recommendation within twenty (20) days of the date of the filing hereof, in accordance with 28 U.S.C. §636 and Local Court Rule 72.1 (a). The parties are further advised that failure to make timely objection to these findings and recommendation waives their right to appeal from a judgment of the district court based upon these findings and recommendation. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

The foregoing Findings and Recommendation disposes of all issues referred to the undersigned magistrate judge in the above captioned matter.

ENTERED this 20th day of October, 2008.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE